United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Productos Roche S.A., Petitioner, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 20-20059-Civ-Scola |
| Iutum Services Corp. and Gerardo Jose Guarino, Respondents. | |

### Order Confirming Arbitration Award

Productos Roche S.A. ("Roche") initiated this action against Iutum Services Corp. ("Iutum") and Gerardo Jose Guarino, seeking confirmation of an international arbitration award. For the reasons set forth below, the Court **grants** the Petition (**ECF No. 1**).

### 1. Background

The Petitioner Roche is a Venezuelan company, and the respondents Iutum and Guarino are both citizens of Florida. (ECF No. 1 at ¶¶ 5-7.) Roche and Iutum entered into a purchase agreement in which Roche would purchase 257 pieces of electronic equipment from Iutum. (*Id.* at ¶ 12.) After Roche paid for all 257 pieces, Iutum only delivered 138 out of the 257 pieces. (*Id.* at ¶ 15.) Therefore, Roche commenced an arbitration proceeding, consistent with the arbitration clause in the purchase agreement, before the Arbitration Center of the Caracas Chamber ("ACCC") on August 21, 2017. (*Id.* at ¶¶ 13-16.)

The ACCC found that notice by express mail was impossible and ordered Roche to provide notice of the arbitration proceeding in the national circulation press in accordance with article 45 of the rules of the ACCC. (*Id.* at ¶ 17.) On April 10, 2018, three arbitrators were appointed. (*Id.* at ¶ 18.) The respondents did not participate, and the arbitration entered a default against them. (*Id.* at ¶ 20.) The arbitrators rendered their final written opinion on November 7, 2018, which found the respondents jointly and severally liable for a payment of $176,785.95. (*Id.* at ¶¶ 21-22.) Because the respondents have failed to pay Roche the amount owed from the arbitration award, Roche filed this petition to confirm and enforce the award. (*Id.* at ¶ 25.)

### 2. Legal Standard

The parties do not dispute that the arbitration at issue here is governed by the Inter–American Convention on International Commercial Arbitration

(opened for signature Jan. 30, 1975, O.A.S.T.S. No. 42, 1438 U.N.T.S. 245) (referred to interchangeably as both the "Panama Convention" and the "Inter-American Convention"). *See* 9 U.S.C. §§ 301–307 (implementing the Convention). With respect to enforcement matters and interpretation, the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6997, 330 U.N.T.S. 38 (effective for the United States on Dec. 29, 1970), reprinted in 9 U.S.C. §§ 201–208, and the Panama Convention are substantially identical. Thus the case law interpreting provisions of the New York Convention are largely applicable to the Panama Convention and vice versa. *See Corporacion Mexicana de Mantenimiento Integral, S. de R.L. de C.V. v. Pemex-Exploracion y Produccion*, 962 F. Supp. 2d 642, 653 (S.D.N.Y. 2013), *aff'd*, 832 F.3d 92 (2d Cir. 2016) ("The Panama Convention and . . . the []New York Convention[] are largely similar, and so precedents under one are generally applicable to the other.") (citing *Productos Mercantiles E Industriales, S.A. v. Faberge USA, Inc.,* 23 F.3d 41, 45 (2d Cir. 1994) ("The legislative history of the [Panama] Convention's implementing statute . . . clearly demonstrates that Congress intended the [Panama] Convention to reach the same results as those reached under the New York Convention" such that "courts in the United States would achieve a general uniformity of results under the two conventions.").

"A district court's review of a foreign arbitration award is quite circumscribed" and "there is a general pro-enforcement bias manifested in the Convention." *Four Seasons Hotels & Resorts B.V. v. Consorcio Barr, S.A.*, 613 F. Supp. 2d 1362, 1366, 1367 (S.D. Fla. 2009) (Moore, J.) (quotations and alterations omitted). Ultimately, "[o]btaining vacatur of an arbitration award . . . is a high hurdle because it is not enough to show that the arbitrators committed an error—or even a serious error." *S. Mills, Inc. v. Nunes*, 586 F. App'x 702, 704 (11th Cir. 2014) (quoting *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 671, (2010) (quotation marks and alterations omitted). It is really "only when an arbitrator strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable." *S. Mills*, 586 F. App'x at 704 (quoting *Stolt–Nielsen,* 559 U.S. at 671 (quotations marks omitted).

### 3. Analysis

"Because the Final Arbitration Award was made in a nation that is a signatory of the Inter–American Convention, the Final Arbitration Award is entitled to be recognized and enforced, unless an appropriate exception for non-recognition applies." *Nicor Int'l Corp. v. El Paso Corp.*, 292 F. Supp. 2d 1357, 1372 (S.D. Fla. 2003) (Marra, J.) (citing 9 U.S.C. § 304). "In 9 U.S.C. § 301,

section 207 of the FAA is incorporated by reference and applied to Panama Convention awards." *Empresa De Telecommunicaciones De Bogota S.A. E.S.P. v. Mercury Telco Grp., Inc.*, 670 F. Supp. 2d 1357, 1361 (S.D. Fla. 2009) (Marra, J.). Section 207 provides that confirmation of an arbitral award falling under the Convention is mandatory "unless [a court] finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207.

Guarino argues that the arbitration award cannot be enforced against the him because of two of the grounds listed in the New York Convention: (1) he was not a party to the arbitration agreement and (2) he was not given proper notice of the arbitration proceedings. New York Convention, Art. V(1)(a), (1)(b). The Court will address each in turn.

First, Guarino argues that—even though he signed the purchase agreement on behalf of Iutum—he was not a party to the arbitration agreement because he did not sign the agreement in his individual capacity. (ECF No. 10 at 3-4.) Roche responds that the Venezuelan Commercial Code binds personally those who contract in the name of companies established abroad and are not duly registered in Venezuela. Venezuelan Commercial Code Art. 357 ("All those who contract in the name of companies established abroad and not duly registered in Venezuela are subject to personal and joint liability for all the obligations contracted in the country"). The purchase agreement that is the subject of the arbitration contains a choice of law provision, which states that Venezuelan law applies to any arbitration that arises due to a dispute between the parties. (ECF No. 1-1 at 5-6.) The arbitration tribunal found that Guarino has signed the purchase agreement and that Iutum was not incorporated in Venezuela, and therefore Guarino can be held jointly and severally liable. (ECF No. 1-1 at 25-26.) Because the tribunal already determined that Guarino is a party to the contract under the applicable law, this argument fails.

Second, Guarino argues that notice by publication in a Venezuelan newspaper is not sufficient notice of the arbitration proceedings. (ECF No. 10 at 4-6.) He asserts in his motion that he did not have actual knowledge of the proceedings and that notice by publication in a Venezuelan newspaper when he does not live in Venezuela is not reasonably calculated to notify him of the arbitration proceedings. (*Id.* at 5.) However, the respondents tell a different story and recount a number of attempts to notify the respondents via certified mail, email, as well as by publication in a Venezuelan newspaper. (ECF No. 13 at 5-6.)

Courts have construed the notice requirement as "essentially sanctioning the application of the forum state's standards of due process," in this case, Venezuela's standards of due process. *Karaha Bodas Co., L.L.C. v. Perusahaan*

*Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 298 (5th Cir. 2004). The hearing must "meet the minimal requirements of fairness—adequate notice, a hearing on the evidence and an impartial decision by the arbitrator" once the parties have had "an opportunity to be heard at a meaningful time and in a meaningful manner." *Soaring Energy, L.L.C. v. Catic USA Incorporated*, 946 F.3d 742, 756 (5th Cir. 2020); *see also, Iran Aircraft Industries v. Avco Corp.*, 980 F.2d 141,146 (2d Cir. 1992) ("if [the respondent] was denied the opportunity to be heard in a meaningful time or in a meaningful manner, enforcement of the Award should be refused pursuant to Article V(1)(b)"). However, "[t]he right to due process does not include the complete set of procedural rights guaranteed by the Federal Rules of Civil Procedure." *Id.* (quoting *Matter of Arbitration Between Trans. Chem. Ltd. and China Nat. Mach. Imp. & Exp. Corp.*, 978 F. Supp. 266, 310 (S.D. Tex. 1997), *aff'd*, 161 F.3d 314 (5th Cir. 1998)).

Roche asserts that the respondents received notice by mail, email, and publication. The arbitration tribunal mailed a notice of arbitration to the address that is listed in the purchase agreement on September 26, 2017 and on May 11, 2018. (ECF No. 13 at 5-6.) Then, on April 30, 2018 and on May 16, 2018, the tribunal emailed notice to Guarino at geraldo.guarino@iutum.com and gerardo@iutum.com. (*Id.* at 6.) On June 4, 2018, the tribunal again sent documents to respondents' address listed in the purchase agreement, but this time they were received and signed for by "Galvan." (*Id.*) The tribunal sent a follow-up email attaching the DHL confirmation of the June 4, 2018 delivery to the same two email addresses. (*Id.*) The Tribunal also sent notices to the emails on July 3, 2018, October 18, 2018, and November 14, 2018. (*Id.*) The tribunal never received bounce-back messages from these emails to indicate that the message was not delivered. (*Id.*) Finally, the tribunal published notification of the arbitration proceedings of El Nacional, a Venezuelan newspaper. (*Id.*)

"Due process requires that notice be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *United States v. Simonton*, 609 Fed. App'x 1002, 1006 (11th Cir. 2015) (quoting *Mesa Valderrama v. United States*, 417 F.3d 1189, 1196-97 (11th Cir. 2005)). Reasonable notice, however, does not require actual notice; it only requires only that the tribunal attempted to provide actual notice to the parties. *Id.* at 1006. Here, Roche's repeated attempts to notify the respondents of the arbitration through various means did not violate the requirements of due process because it was reasonably calculated to apprise the respondents of the arbitration proceedings. *See Simonton*, 609 Fed. App'x at 1006 (notice comported with due process when it was sent via certified mail to the Defendant's residence and the jail where he was incarcerated and published notice in the Wallstreet Journal). That Guarino never

received actual notice is not sufficient to violate the requirements of due process. *Id.*

### 4. Conclusion

In sum, because the Court has found no grounds upon which to refuse to recognize or enforce the arbitration award, the Court must confirm the award. *See* 9 U.S.C. § 207. The Court **grants** the Petitioner's Petition to Confirm and Enforce the Arbitration Award (**ECF No. 1**). Final Judgment is hereby entered in favor of Productos Roche, S.A. and against Iutum Services Corp. and Gerardo Jose Guarino. This case is **dismissed** with prejudice and shall remain **closed**.

**Done and ordered** at Miami, Florida on April 9, 2020.

Robert N. Scola, Jr.
United States District Judge